The opinion of the court was delivered by
Spencer, J.
J. A. Gresham executed his note to plaintiff, with W. H. Seymour as indorser, for $4125..
Plaintiff alleges1 that after various partial payments thereon by •Gresham, there remained due thereon at its maturity $1507 20, which not being paid on due demand, said note was protested, and the indor•ser duly notified. He therefore brings this suit against the indorser.
The defendant answered by a general denial, and the averment that ■Gresham had made payments to an amount which reduced the balance due to $957 20; that there was never any legal demand of payment, protest, or notice of protest, of said note. By supplemental answer he alleged in general terms that Gresham had made other and further payments on said note, and that there was but little if any thing due thereon.
After considerable testimony had been taken on the subject of payments, the court on objection of plaintiff’s counsel to proof by defend•ant of any other defense than that of payment, permitted and required defendant to elect between the plea of payment and that of want of demand, protest, and motion, on the ground that they were inconsistent, 'The defendant elected the latter plea. He complains of this ruling, but *1342 reserved no bill of exceptions to this refusal of the judge to hear further evidence on the plea of payment. We need not therefore notice the matter further.
The note was protested on thirty-first July, 1876, and notice of protest served on the next day, first of August; but by clerical error the notary certifies that the notice was served on thirty-first August instead of first August. He and his deputy were called to explain, and did explain, this error. Defendant objected to the proof. It is unnecessary to pass upon the objection, since the whole theory of the defense proceeds upon the assumption that the notice was given or attempted to be given on first August. The theory, as we shall see hereafter, is that the notary on first August left the notice for Seymour in the wrong office, to wit, Shannon’s, and that one Dunham, by mistake, inclosed it in his letter of that date to Shannon in New York.
After the case had been submitted to the court, but before any decision thereon, the plaintiff made application to have the case re-opened, and re-assigned for trial, on the ground that he had since the trial discovered new and important testimony, etc. This application was accompanied by the usual affidavits, of diligence, discovery, materiality, together with detail of facts expected to be proved, etc. The court granted the application, re-opened the case, and re-assigned it for trial on-day of-.
The judge states as reason, that the facts disclosed would have been good ground for new trial, and that therefore he re-opened and re-assigned the cause. We see no error in this. A state of facts which would justify and require a new trial after judgment certainly justifies the re-opening and re-assignment of the case before judgment. The law does not require courts to do vain things — to go on and render judgments which it is manifest they would immediately have to set aside.
The merits of this controversy are narrowed down to two questions—
First — As to the legality of the demand of payment, and therefore of the protest;
Second — As to whether there was in fact a good service of notice of protest on Seymour.
The first question grows entirely out of the fact that the deputy notary, Barry, who demanded payment of the note, was sworn as such by Cohn, the notary, and not by a judge or justice of the peace. It is further urged that Barry was appointed by Cohn as deputy, and by him sworn as such, on sixth January, 1868, and that the offices of both Cohn and Barry, ex necessitate, were vacated by the going into operation of the new constitution in April, 1868. Arts. 150,153, and 158 of that constitution are cited as authority for this proposition. We do not *1343 think they support it. It is stated as a fact by defendant that Cohn was re-appointed and qualified anew as notary under the constitution of 1868, but that Barry did not. We think it matter of no moment whether he ought to have done so or not, or whether he did so or not. Notaries and their deputies are officers recognized by law. R. S. 2491 to 2527. Notaries were in 1868 authorized to administer oaths, “ quoad the duties of their office,” R. S. 2493, and to appoint deputies. R. S. 2527.
Whether the notary Cohn had authority to administer the oath to his deputy or not is unimportant so far as third persons and the public are concerned. Barry was in the actual and open exercise of the duties of the office of deputy notary, and the public is not to be expected or required to institute investigations into the regularity and legality of the mode of his qualification. Such a requirement would be absurd in the last degree. The same rule would require every person filing a suit in court to investigate the question as to whether the deputy clerk or deputy sheriff actually discharging duties as such was or was not duly sworn as such. In conclusion, it is enough to say that Barry was an acting deputy notary, under color of authority, and so far as third persons are concerned this suffices to legalize his acts. The demand of payment and protest were therefore legal.
The only remaining question is one of fact. Mr. Cohn, the notary, certifies that on (31st) first August, 1876, he gave notice of protest to Seymour, by leaving the same “ on his desk in his office, he not being in.” Cohn states as a witness “positively” that he served the notice as stated, “ early in the morning of the first August.” It is not denied that he is a correct and truthful man. But the defendant contends that, by mistake Cohn left the notice on Shannon’s desk in an adjoining office; that by mistake one Dunham put this notice into a letter by him written that day to Shannon in New York. The testimony of Dunham and Shannon was taken, and it may be said to establish the fact that Dunham did send the notice to Shannon, and that it did not return to New Orleans until seventeenth August. But we do not think this shows the statement of Cohn to be false. Both might be true; for after Cohn left it on Seymour’s desk it might have been taken into Shannon’s office by some other person. •
Many witnesses were sworn with purpose of showing that Cohn did not come into Seymour’s office on first August, 1876. This testimony was taken in May and June, 1877, and all the witnesses state that they had never been talked to on the subject. The witnesses who are emphatic and positive that Cohn did not come into Seymour’s office that day are Seymour, the defendant, and Killaly, his copying-clerk. These witnesses both swear positively that they were in the office the whole time from 9 A. M. to 4 P. M. of that day, and that it *1344 was impossible that Cohn could have come in and they not have seen him. But when we come to compare the testimony of these witnesses they are utterly irreconcilable. As we have stated, Seymour states that he was in the office all day, passing acts and helping Killaly make up his indexes, etc.; that he knew he was there all day without going out, only by reference to the amount of work he did in the office that day; that is his means of knowing, etc. Now Killaly swore that he came to the office that morning at nine o’clock, and produces a memorandum to that effect; that he found the office door open, and presumes it was opened by the colored man who attended the office. He swears that defendant Seymour was not in the office that day 1 Now Seymour swears he was there all day, and helping Killaly. Being asked if any person or persons came in during the day, Killaly said plenty of them, but could not name a single man, but he could swear Cohn did not come. In some respects this witness’s memory was remarkably minute— descending into minutes in point of time, and to trifles in other matters. The judge a quo heard all this testimony and he did not consider it as disproving the truth of Cohn’s statement. Neither do we. Perhaps it was before 9 A. M. that Cohn left the notice, for he says it was early in the morning, and perhaps this accounts for the office being open when Killaly reached it. Mr. Cohn, who had officially and contemporaneously certified, swears positively to doing a certain thing on a certain day, more than a year before. Seymour and Killaly swear that they were in the office all day and did not see him do it. We have no great confidence in the accuracy of a man’s statement who undertakes to swear where he was every minute of a certain day, a year ago, where it is not pretended he was engaged otherwise than in the ordinary routine of his daily business. It is manifest that Killaly’s memory is very bad, indeed, for he swears that Seymour was absent from his office all day, whereas Seymour swears that he was in the office all day from nine to four o’clock, and produces notarial acts passed by him at his office on that day.
Cohn may have deposited the notice before Seymour or Killaly reached the office. He certified officially at the time that he had so deposited the notice and confirmed the truth of his certificate by his positive oath to same effect. Defendant has not disproved by satisfactory evidence the truth of Cohn’s statement. We attach but little importance to Dunham having sent the notice on to New York by mistake, as he swears; and we may add that we give but little credit to his evidence. This record teems with facts’ and circumstances going to show that he was either a remarkably unfortunate man, or else a man who was not unfamiliar with “ ways that are dark.” It is unnecessary to detail these facts and circumstances; suffice it to say that, like the district judge, we prefer to believe Mr. Cohn.
*1345 We think, however, that the judgment is for too much by $25, and improperly allows eight per cent interest. The note stipulating no interest, it only draws five per cent from maturity. Plaintiff himself states that he received $2500 in money, and was to allow five per cent bonus thereon, making $2625, and that subsequently he received $17 80 more. This reduces the debt to $1482 20,-instead of $1507 20, as allowed below.
It is therefore ordered, adjudged, and decreed that the judgment, appealed from be amended by reducing the amount thereof from $1507 20 to fourteen hundred and eighty-two 20-100 dollars, and by reducing the rate of interest thereon from eight to five per cent, and ■that as thus amended said judgment be affirmed at costs of defendant in the court below, and at plaintiff’s costs in this court.